We have four cases on the calendar this morning, two from the Claims Court, two patent cases, one from the PTAB and one from the District Court. One of the claims cases being submitted on the briefs and will not be argued, and so we have three argued cases. The first one is Trevor Lankamp v. United States, 2018-2052. Mr. Lister. Good morning, Your Honors. Jim Lister for Plaintiff Appellant Trevor Lankamp, and may it please the Court. This case presents a circumstance this Court has not encountered before in its executive life of New York cases. One would think that we've come close to it at least three times. Yes, but not this case. Question is sorting out the cases. Yes. This is the first case for the tort settlement, does not refer to a third party who will be making future settlement payments. The only party mentioned in the Federal Torts Claims Act settlement agreement as making payments is the government, which was the settling tort defendant. In the three previous cases this Court has had, the settlement agreement said that the government will be purchasing or buying an annuity from an insurance company, which will make the future payments. Those cases therefore presented the issue of whether the insurance company referred to in the settlement agreement as making payments would be solely liable for making those payments or would instead be co-liable with the government for those payments. This case does not present that co-liability or sole liability issue. As the government is the only party mentioned in the settlement agreement as having payment liability, it is liable to make the payments. The Court in Massey wrote, because the payments are mandatory, the government must be responsible for their payment. No one else is a party to this agreement. And that was, and if I remember right, Massey, even in Massey, the agreement said purchase an annuity and you don't even have, I mean, the agreement here doesn't even reach that threshold. No, it says, you're correct, Your Honor. It says the United States dot, dot, dot, will pay dot, dot, dot, a structured settlement. In this case. In this case. And a structured settlement is just a sequence of payments made over time. It doesn't say that it has to be acquired from a commercial entity that's in the business of creating contracts to make that promise. Yes, those are the Stein and the Kornblum treatises. The Stein treatise was the one this Court cited in Schaaf for the conclusion that guarantee language, if the plaintiff died young, dealt with the heirs and not with who was responsible for payment. So those are authoritative treatises and they go on to not only define a structured settlement as simply payments over time from whatever source, but they further go on to say that the original defendant remains liable unless the plaintiff does something to release the original defendant. Which could be an agreement by the plaintiff that all the government has to do is purchase an annuity and then that completes the government's performance. But we don't have that here. What about the second piece, the piece about lack of authority of the assistant U.S. attorney to enter into what you say the agreement provides? Yes, Your Honor. The U.S. mounts that argument as a contract construction argument. In their brief, they specifically disclaim any argument that the settlement agreement is void for lack of authority. So we are dealing with contract construction. As with all canons of contract construction, you have the ability to influence the meaning of words within the permissible boundaries of those words. The construction that the government advocates must be a construction to which the words of the contract are fairly open. The words of this contract are not fairly open to the government's construction. The United States will pay, not buy, structured settlement. No mention of insurance company, no mention of purchasing an annuity. But the issue of authority is still there. I think the U.S. has withdrawn the issue of whether the settlement agreement is void for lack of authority. This is the government's brief at page 45, note 9. I guess they'll tell us momentarily. Your Honor, I'm sorry, I simply didn't hear your question. They will confirm that, presumably, momentarily. Yes, I would hope so. Just so I understand, I thought that one of the arguments you were making about the authority question was this, that since the present value in 1984 of this stream of payments was in fact the $164,000 that, when added to the immediate cash payment, results in $400,000. This was, in fact, within the authority that they say the AUSA had. Exactly, Your Honor. The government has made the argument that we should construe the contract in a particular way. So, of course, we respond with, no, this contract was within the authority of the government's attorney. This is a Federal Tort Claims Act settlement. The Federal Torts Claims Act has a number of provisions in it. One of it is 28 U.S.C. 2677 and 72, which gives the U.S. Attorney General the authority to settle these cases. Another of them is the related provision that limits the attorney's fees, contingent attorney fees, of the plaintiff's attorney to 25% of the settlement. And then you have general principles of court law that if a plaintiff suffers future injuries, the aggregate value of those injuries has to be reduced to present value. So those are three related principles. With the future injuries, under the Hoskey case, you don't just award a judgment for the total raw value of the future injuries. You account for the time value of money, discount the present value. And the offering on the market by Executive Life of this deal for $164,000 establishes conclusively that that was the present value of this set of promises. Yes. No one introduced any evidence to suggest it was not the present value. Similarly, with the 25% cap on attorney's fees, and this is the Wyatt case, you do not give the plaintiff's attorney 25% of the raw value, the raw sums of all those future payments. Instead, you discount them to present value. And it's 25% of the discounted present value. Here we're dealing with a third issue, which is the specific settlement of authority of the particular government's attorney. There was an internal memo within the government, which was not seen by the plaintiffs until 35 years later, which limited the assistant U.S. attorney to using $400,000 of the granting attorney's $750,000 authority. The memo authorized that U.S. attorney to spend enough money to purchase the annuity, which is the present value of all those future payments. So again, the same concept is with the future damages and with the attorney's fees. The government attorney acted within her authority. She did not defy her authority by signing a settlement agreement, which simply has the government as the payer. She acted within her authority. Our construction of the settlement agreement and authority fits with the words of the contract, and frankly, the government's construction doesn't, because it requires you to change the word, pay a structure settlement, to buy an annuity from an insurance company, which is simply a step too far. What about the provisions of the contract that perhaps don't make this clear, and maybe that's your answer, but convey a sense that this contract ended the government's future responsibility, which in your view would, as a practical matter, not be true if the government is now liable for making the payments? Right. And to answer your Honor's question, you consider both the settlement agreement, which is called a stipulation for compromise settlement, which is at Appendix 168, and then the related follow-up release document, which is at Appendix 165. In the settlement agreement, we have paragraphs 2, 3, and 4. Paragraph 2 defines, is what states the United States will pay a structured settlement. Paragraph 3, then, says the aforesaid amount, the structured settlement, shall be paid as follows, and it lists out the payments. Paragraph 2 says that this settlement is in exchange for satisfaction of any and all claims plaintiff now or may have to have on account of the incident or circumstances giving rise to the suit. So the settlement is for release of the tort claim, the incident or circumstances giving rise to the suit. Paragraph 3 simply refers back to 2. And paragraph 4 repeats that the plaintiff agrees to set some in full satisfaction of claims regarding the incident or circumstances giving rise to the suit. Then, to get to your honors question, paragraph 6 is where the U.S. hangs its hat. Paragraph 6 says that in exchange for the payments, the claimant releases all claims set forth in paragraphs 2, 3, and 4 above. So how the U.S. interprets that is that the settlement agreement in paragraph 2, 3, and 4 creates rights, and then in the next breath, paragraph 6 takes away those rights. That's not an accurate interpretation because paragraph 2 defines claim as claims arising from the incident or circumstances giving rise to the suit, as does paragraph 4. Paragraph 3 refers back. So when paragraph 6 talks about a release of claims set forth in paragraph 2, 3, and 4, it's using claims in the same sense as paragraphs 2, and 4, and 3, which is claims arising from the tort. So what's being released is the tort and not the obligation to make the future payments, including the 2028 payment and all the other listed payments that are set forth in paragraph 3. How this is confirmed is in the release that was signed several weeks later by the Lancaps and was required by paragraph 6. The release was signed on December 7, 1984. On December 5, 1984, the government purchased the annuity, and it also at about that date delivered an upfront check to the Lancaps' parents, which was the 260-235. So you walk through the release. If the proper interpretation of the deal was that by purchasing the annuity, the government completed its performance to Trevor Lancap, we would have a release that said the government has completed its performance. The government's payment is sufficient. The government is done. Instead, we don't have that. What we do have is a statement in the release that the government has paid the Lancaps' parents the $239,000, the receipt of which is hereby acknowledged, first sentence of the release. So the government had paid the 239 to the parents. They required a release which said it's been paid. Now the government had already at this time purchased an annuity. Did the government then say in an exchange for the purchase of annuity, which has now been made and completing our obligations, the Lancaps give a release? No, it didn't. There's no mention in the release of the purchase of the annuity. Not at all. Instead, the release restates the future payments, the 2028 payment, the 2018 payment, the payments for life. And then what is being released? At the end of the release, it lists specifically what is released. And it is claims arising from injuries to Trevor Lancap which occurred on April 19, 1980 at Fort Huachuca, Arizona, the burning accident, the scalding. Counsel, you're well into your rebuttal time. Do you want to save it or use it? I'll save it. Thank you. Ms. Finnon, is it? Good morning. May it please the court, on behalf of the United States, we ask that this court affirm the decision of the trial court in finding that there's no liability on the party's cross motions for summary judgment below. The court appropriately found, and we submit this court should find as well, that the plain and unambiguous language of the settlement agreement did not obligate the United States government to any continuing liability. It simply obligated the U.S. to, at settlement, make a cash upfront payment and to purchase structured settlement annuities, which it did. Performance is not stated. As you know, because you've been here the last 15 minutes, to me a quite large problem with that contention is that this contract, this settlement agreement, does not say purchase a structured settlement. It says pay a structured settlement, in contrast to, I think, all three of the earlier cases, but certainly the two that went in the government's favor. Why isn't that close to dispositive? Well, Your Honor, we have to read the reference to will pay structured settlement in paragraph two, in concert with the rest of the agreement. It does, the future periodic payments are then set forth in paragraph three, that provides in that passive voice that the future payment shall be made, shall be paid. In the prior cases that come up to this court, that passive reference. I'm sorry, but the operative commitment to pay is in the active voice in paragraph one. The government will pay the structured settlement. The next paragraph is a matter of timing, so you wouldn't expect any significance to be attributed to the choice of active or passive voice. It just says, when are these amounts going to be paid? But the operative commitment is an active voice the government shall pay. Shall pay a structured settlement, which... But even the two treatises that the Court of Federal Claims relied on for a definition of structured settlement does not say it's an annuity. It is simply a sequence of payments over time. And the agreement doesn't recite purchase of an annuity, does it? It does not recite purchase of annuity, but it does refer to structured settlement as a thing, as a tangible thing, and then defines that in paragraph three. And the other agreement, and the other cases where liability was not found for the government, there was a recitation of a purchase of annuity. Which is not the case here. There is not, but there is a reference to structured settlement, which we would submit as a thing, because why reference structured settlement at all, right? Well, structured settlement means it is structured. A lump sum payment, and then a certain amount per month, per year, that is the structure. Yes, Your Honor. But in the context of the whole agreement, we have paragraph six that is a release of not just paragraph two, but paragraphs two, three, and four. It is a release upon delivery of the... The only way to read the release of paragraph three is that upon delivery of the structured settlement, in this case an annuity contract, those future payments are released. It seems to me, unless there's a reference to purchasing an annuity, then the delivery of the structured settlement doesn't end until 2028. If that were the case, Your Honor, then... It's the last of the dollar payments, right? I guess it may be even... Well, no, so... I'm sorry, it could go on even longer. Right, the monthly. Right, it doesn't end until all the money promised is delivered. But then if that were a continuing obligation of the United States, why would paragraph six presuppose that the land camps will release liability for paragraph three? It just means that they can't claim any more relief from the United States for the tort than this promises. Well, that would be a release of the tort claims, but it releases paragraph three. It releases the paragraph in which the future payments are scheduled. And to the extent there is any ambiguity with respect to the meaning of structured settlement in this agreement, I would point, Your Honors, to the record at two instances. Appendix 179, plaintiff appellant's counsel below argued, and this is a quote from their brief, defendant converted its periodic payment obligation into a sum certain by purchasing an annuity from ELNY, further into the sentence, and brought the periodic payment provisions of the settlement agreement to fruition with the expenditure of approved funds and within the limits of the authority extended by the acting assistant attorney general. To the extent this matter was before the trial court below, that standard for summary judgment as here is whether or not there's any genuine dispute of material fact with respect to the court below looks beyond those four corners. Do you line yourself up with any of the prior cases? Yes, Your Honor. So all of the cases that have come up to this court have been similar, but none have been identical. There are similarities between them. As Your Honors have noted, the prior agreements refer to the purchase of an annuity. This one just refers to a structured settlement. But other aspects of those settlement agreements are similar to the settlement agreement in this case. All of the settlement agreements are structured in the same way with an opening paragraph about what the government will pay in the second paragraph. And the others refer to purchasing an annuity. I'm sorry? The others refer to purchasing an annuity, not insure. Yes. Yes, they do. You would say this is a not case? I'm saying it's similar in other respects, right? They all provided a future payment stream that shall be paid. No, all of the provisions in Knott, Shaw, or Hendrickson are not all equally present in Landcamp. That is correct. How do you distinguish the Massey case? So Massey is distinguishable on multiple grounds, as it was from Shaw, Knott, and Hendrickson that have come up to this court in the past. Massey was a settlement of also a claim arising from the bankruptcy of ELNY. But the underlying settlement was a Military Claims Act settlement, not a Federal Tort Claims Act settlement. Why would that make that matter? Well, it matters on a couple of bases. I can, first of all, take the plain language. It doesn't matter for plain language. For plain language, Massey is distinguishable because the Massey court, in finding liability, had honed in on the fact that the Massey settlement agreement included the phrase that the future payments shall be made, quote, on behalf of the United States. That phrase in the Massey settlement agreement, the Massey court found, Your Honor found, that it was dispositive of a continuing obligation, a delegation of responsibility, but not a release or transfer of responsibility. That phrase, on behalf of the United States, is not present in Shaw, Knott, Hendrickson, or in Landcamp. The fact that the Military Claims Act settlement in Massey was a Military Claims Act settlement is relevant for other reasons. There was no evidence or argument in that context about authority. We don't know what the Military Claims Secretary's authority was with respect to continuing liability. We do know, in all of the rest of these FTCA cases, what the bounds of authority were by regulation and what they actually were for the AUSA to have entered settlement. So authority was not taken up or considered in the Massey case. That's one critically distinguishing factor. There was some discussion with Mr. Lister about your position on contract interpretation versus contract validity or something else with respect to authority. Can you clarify that? Yes. Mr. Landcamp's attorney has argued that we have dropped, waived, or otherwise abandoned our argument that there was no authority to contract with respect to this settlement agreement. He misconstrues our position, our position before the trial court in all of the briefing, and in all of the briefing before this court, has been that authority is a central threshold issue for contract interpretation, right? That's what distinguishes a contract with the government from a contract with other parties. A contract with the government requires offer, acceptance, consideration, and evidence that the government representative to have settled, entered the settlement, or to have ratified the settlement had actual authority to have done so. We would submit that in this case, that is a central element of contract formation, as the trial court also found. Why is Mr. Lister's view of the contract a view that would put it outside the boundaries of the AUSA's authority? Since what I said before, there's the $239,000 payment to the parents and then $160,000 plus change for the market value of the set of these promises. That adds to $400,000. And that's all he's asking for? Well, that's not all he's asking for. That's not all that we understood he was asking for, right? We have argued- It surely must be assessed at the time of the entry, the present value. Obviously, the present value is going to be, of a promise to do something over the course of 40 or 50 years, is going to be a much smaller, with contingencies in fact, a much smaller number than the sum total of payments that are made over the course of the period covered. Particularly if the contingencies pan out in his favor. Right. Understood, Your Honor. But authority is a question of fact that exists at the time of settlement. Right, but the only fact, the best factual resolution that you have is AIG Willard gave the AUSA $400,000 in authority. Yes. It doesn't seem to me that his interpretation of the contract exceeds that. Well, Your Honor, his interpretation of the agreement presupposes that the United States was not on the hook for just expending the $400,000, that it did in fact expend at settlement. But instead, that it was a direct payer liability for the future settlement sums in paragraph three of the settlement agreement. To date, this is 30 years later, that's already well in excess of a million dollars. If Mr. Landcamp should live another couple decades, it will be another several million dollars. If this court were to accept Mr. Landcamp's proffered interpretation of the agreement, the AUSA to have entered the settlement, or anyone to have ratified it back in 1984, would have had to have had actual authority to have entered into a settlement that could result in millions of dollars of additional liability. And that's simply not, there's just no evidence of that at all. Mr. Landcamp on post-judgment reconsideration has tried to raise institutional individual ratification arguments. We submit that the lower court's denial of that motion for reconsideration, which Your Honor's reviewed for abuse of discretion, was not an abuse of discretion. He didn't meet the thresholds for excusable neglect. But even if he did, he has not pointed to any evidence that anyone had any actual authority, actual constructive knowledge that this agreement was for millions of dollars of additional liability, or had actual authority to have entered or ratified that kind of agreement. If that is the interpretation that this court should adopt, or if on remand after fact-finding, on an ambiguity, the trial court should adopt, that would render this agreement void and unenforceable. The Supreme Court has been clear that when a court is faced with interpreting a settlement agreement, and there is one reasonable interpretation, that reasonable interpretation is entitled to meaning, right? If there are more than one interpretation, and one interpretation should render the agreement legal and enforceable, and the other interpretation should render it illegal and unenforceable, well then obviously the court is to assume that the parties meant to enter a legally enforceable agreement. And the one interpretation that would render the agreement legal and enforceable is that which carries the day. And so we would submit- And does that principle, I'm not sure in the end it matters, but does that principle govern even when the question of legality is one that required information that certainly Langan camps didn't have at the time, and maybe could not have gotten, or maybe they could have gotten, about what Willard authorized? Your Honor, so we don't actually know what the Langan camps knew or didn't know, because there is no evidence in the record at all to substantiate that this was their contemporaneous interpretation of the agreement. Notably in that regard, the only extrinsic evidence of contemporary intent is that set forth in the declaration of Mr. Langan camps' attorney from the early 1980s, and that's in appendix 73. And in paragraph eight, he very carefully, we would submit, phrases a simple statement that the settlement and release do not refer to an annuity. He makes no assertions regarding his contemporaneous intent or his client's contemporaneous intent from 1982. He as an attorney at the time would have been in the perfect position to now declare under penalty of perjury that his client's intent and his intent was that the government remain liable as direct payor for however long Mr. Langan camps should live, or that they didn't know that the value of the settlement was $400,000, or that they didn't know that the government was intending to purchase an annuity and satisfy its obligations. None of that is in Mr. Ford's declaration, and that's the only evidence in the record of contemporaneous intent. What Mr. Langan camp proffers now is an interpretation 30 years after the settlement agreement. To the extent that this court should find that structured settlement, that missing word annuity, creates some kind of ambiguity with respect to what a structure is. But that's not the only word that's missing. The word purchase is missing. Yes, the word purchase is missing. But your honor, to the extent that creates some heartburn or pause for the court, the next step would be to look beyond those four corners to the rest of the record, to extrinsic evidence, to what the parties intended. We would submit that in this instance, the undisputed record evidence is at a minimum that the United States then intended that its purchase of annuities would discharge its liability, right? We have pages and pages of letters between the AUSA and the Torts Division, the Department of Justice, and the AUSA and the General Accounting Office at the time, in which only $400,000 was appropriated for settlement, right? We have a letter written on behalf of then Assistant Attorney General. Does any of that evidence actually refer to, let's call it the black swan possibility, that the annuity issuer will go belly up? I don't, there's nothing like that in the record. So I guess, and if there's no reference to that, it isn't really an unreasonable assumption to say that people were just counting on the fact that this insurance company was going to be around. And therefore, to say, we can buy this on the market, we're done, is in fact an assumption that we really are done without specifically addressing the possibility that, goodness, this particular insurance company is going to go under. Well, Your Honor, I don't know what the party's assumed with regards to the annuity. But there's no reference to any of that? Right, no, there's no reference. But there is, importantly, many references to the government's liability not exceeding $400,000. And I'll point you to Appendix 136, starting at 136. Very quickly, counsel, as you've well exceeded your time. Yes, Your Honor. Do you want to quickly point us? Oh, sure. So the letters of contemporaneous intent of the United States government are at Appendix 136 through 143, and then again at 162. Specifically, 162, the Acting Assistant Attorney General's letter to U.S. Attorney for the Western District of Maryland, says the sum of settlement shall, quote, not to exceed $400,000. Thank you, counsel. Mr. Glister has a little rebuttal time. On whether the government is arguing here that the contract is void for lack of authority, I cited their brief, page 45, footnote 9. What the government said there was, we have not alleged that the plain and unambiguous agreement is a nullity. Sorry, 45 footnote 9? My red brief, 45, doesn't have a footnote 9. What am I missing? Okay, so it's 22119, document 25, page 56, government's brief. Okay, go ahead. Okay, yeah, so we have not alleged that the plain and unambiguous agreement is a nullity based on lack of authority. So I relaxed somewhat after seeing that one. We're here on contract interpretation. There was a mention of no one higher up in the government knowing what the terms of the settlement agreement are. Maybe I misheard, but that's what I heard. Appendix 162, where the Assistant Attorney General, the head of the Civil Division said, send me the text of the agreement. He wanted the stipulation of dismissal to which the settlement agreement was a attachment, and he wanted the release. So he had all that language with him. All the documents the government refers to are documents from the government's old file. They pulled them out of their own file. They do not go to mutual intent, which is the question in contract formation. Unless your honors have further questions, we ask that the court reverse the summary judgment granted the United States and rule as a matter of law that the United States is liable. Thank you, counsel. Case is submitted.